**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

|  |  |  |
|---|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| ASHLEY INGRAM, LLC, a South Carolina limited liability company, J&H EXTERIORS, INC., a South Carolina corporation, BLUEWATER INVESTMENT GROUP, INC., a South Carolina corporation, AND KIRK'S BLUFF TOWNHOME ASSOCIATION, INC., a South Carolina corporation, | ) ) ) ) ) ) ) ) ) ) ) ) | Case No.   9:24-cv-04754-DCN |
| Defendants. | ) ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

The Plaintiff, ATAIN SPECIALTY INSURANCE COMPANY, ("Atain"), pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, files its Complaint for Declaratory Judgment against Defendants, ASHLEY INGRAM, LLC ("Ashley Ingram"), J&H EXTERIORS, INC. ("J&H"), BLUEWATER INVESTMENT GROUP, INC. ("Bluewater") and KIRK'S BLUFF TOWNHOME ASSOCIATION, INC. ("Kirk's Bluff") and in support thereof states as follows:

## INTRODUCTION

1.    Atain seeks a declaration in this action that no insurance coverage is afforded to Ashley Ingram, J&H, Bluewater, and Kirk's Bluff, or, alternatively, that coverage is limited under the insurance policies issued by Atain to Ashley Ingram and J&H, respectively, with respect to an underlying lawsuit filed by Kirk's Bluff, in the Court of Common Pleas of Beaufort County in South Carolina under civil action number 2022-CP-07-01708 ("Underlying Lawsuit").

2.    Atain issued Ashley Ingram as the sole named insured on eight insurance policies:

- Policy No. CIP241182, effective January 26, 2015 through January 26, 2016 (the "Ashley Ingram 2015-16 Policy" **Exhibit 1**);
- Policy No. CIP241916, effective January 26, 2016 through January 26, 2017 (the "Ashley Ingram 2016-17 Policy" **Exhibit 2**);
- Policy No. CIP287583, effective January 26, 2017 through January 26, 2018 (the "Ashley Ingram 2017-18 Policy" **Exhibit 3**);
- Policy No. CIP337258, effective January 26, 2018 through January 26, 2019 (the "Ashley Ingram 2018-19 Policy" **Exhibit 4**);
- Policy No. CIP337854, effective January 21, 2019 through January 21, 2020 (the "Ashley Ingram 2019-20 Policy" **Exhibit 5**);
- Policy No. PRB13473, effective January 29, 2020 through January 29, 2021 (the "Ashley Ingram 2020-21 Policy" **Exhibit 6**);
- Policy No. PRB13553, effective January 29, 2021 through January 29, 2022 (the "Ashley Ingram 2021-22 Policy" **Exhibit 7**); and
- Policy No. PRB13653, effective January 29, 2022 through January 29, 2023 (the "Ashley Ingram 2022-23 Policy" **Exhibit 8**) (collectively, the "Ashley Ingram Policies").

True and correct copies of the Ashley Ingram Policies are attached and incorporated by reference as **Exhibits 1-8**.

3.     Atain issued to J&H as the sole named insured two insurance policies from 2014-2016: Policy No. CIP213193, effective July 5, 2014 through July 5, 2015 (the "J&H 2014-15 Policy," and Policy No. CIP213717, effective July 5, 2015 through July 5, 2016 (the "J&H 2015-16 Policy") (collectively, the "J&H Policies"). True and correct copies of the J&H Policies are attached and incorporated by reference as **Exhibits 9-10**.

4.     Bluewater seeks insurance coverage under the Ashley Ingram Policies, and is named herein because Atain seeks by this litigation to confirm that it has no duty to defend or indemnify Bluewater under the Ashley Ingram Policies for the Underlying Lawsuit.

5.     Kirk's Bluff is joined in this action solely based on its status as the Plaintiff in the Underlying Lawsuit to be bound by the judgment to be rendered in this action.

6.     Therefore, a controversy exists between the parties to this action regarding insurance coverage for the Underlying Lawsuit under the Ashley Ingram Policies as to Ashley Ingram and Bluewater and under the J&H Policies for J&H, and an entry of a declaratory judgment is required to resolve the controversy.

## THE PARTIES

7.      Plaintiff Atain is a Michigan corporation with its principal place of business in Michigan. Atain is an authorized surplus lines insurance company under South Carolina law and issued the Ashley Ingram Policies to Ashley Ingram, and the J&H Policies to J&H.

8.      Defendant Ashley Ingram is a limited liability company organized and existing pursuant to the laws of the State of South Carolina and has its principal place of business in South Carolina. Ashley Ingram's sole member and manager, Ashley Ingram, is a South Carolina citizen and is not a citizen of Michigan.

9.      Defendant J&H is a Georgia corporation and has its principal place of business in Georgia and at all times material hereto was performing work or operations in South Carolina.

10.      Defendant Bluewater is a corporation organized and existing pursuant to the laws of the State of South Carolina and has its principal place of business in South Carolina.

11.      Defendant Kirk's Bluff is a nonprofit organization organized and existing pursuant to the laws of the State of South Carolina and has its principal place of business in Beaufort County, South Carolina.

## JURISDICTION AND VENUE

12.     According to 28 U.S.C. § 1332, diversity jurisdiction exists between the parties, as the Plaintiff, Atain, does not share citizenship of the same state with any of the Defendants and the amount in controversy exceeds $75,000.

13.     Venue is proper in the District of South Carolina under 28 U.S.C. § 1391 because at least one defendant is domiciled within this District and the events giving rise to the claim, including the Underlying Lawsuit, occurred in this district.

14.     All conditions precedent have occurred, have been performed, or have been waived.

## COMMON ALLEGATIONS

<u>THE UNDERLYING LAWSUIT</u>

15.     Kirk's Bluff filed a lawsuit in the Court of Common Pleas of Beaufort County, South Carolina, case no. 2022-CP-07-01708 against Ashley Ingram, J&H, Bluewater, and additional parties that participated in the construction of the residential townhomes (the "Underlying Lawsuit"). A copy of the current operative complaint of the Underlying Lawsuit is attached as **Exhibit 11**.

16.     Kirk's Bluff alleges that for the purposes of the present litigation, Kirk's Bluff either already is, or is seeking to become, the assignee of certain

rights belonging to each of the individual owners of units at Kirk's Bluff. (Ex. 11, ¶3).

17.    Kirk's Bluff alleges in the Underlying Lawsuit construction and design defects arising from the development and construction of a group of individual residential townhomes commonly referred to as Kirk's Bluff Townhomes, located in Bluffton, Beaufort County, South Carolina ("the Subject Property"). The Subject Property allegedly includes 10 buildings comprising 36 residential townhomes total, along with other common areas. (Ex. 11, ¶1).

18.    Kirk's Bluff alleges that the Town of Bluffton issued building permits for the various townhomes at the Subject Property between December 16, 2014 and 2016 ("Building Permits") and issued the corresponding certificates of occupancy between 2015 and 2016 ("Certificates of Occupancy.") (Ex. 11, ¶39).

19.    Kirk's Bluff alleges that Ashley Ingram acted as general contractor for the Subject Property, and was responsible for coordination and supervision of construction. (Ex. 11, ¶40).

20.    Kirk's Bluff alleges that Bluewater acted as the developer for the Subject Property, and was responsible for coordination and supervision of construction, and placed the Subject Property into the stream of commerce. (Ex. 11, ¶41).

21.    Kirks' Bluff alleges that J&H installed siding, flashings, and other related appurtenances at the Subject Property and otherwise designed and oversaw construction of the same. (Ex. 11, ¶ 48). J&H is further described in the Underlying Lawsuit as a "Subcontractor." (Ex. 11, ¶ 54).

22.    Kirk's Bluff alleges that from the time of construction until turning the property over to individual owners in or around 2017, Bluewater exerted control over Kirk's Bluff's Board of Directors. (Ex. 11, ¶ 42).

23.    Kirk's Bluff alleges that the Subject Property contains numerous design and construction defects committed by Ashley Ingram and Bluewater including, but not limited to, the following:

    a.  Improper installation of exterior lap siding;
    b.  Improper installation of exterior trim board;
    c.  Improper installation of doors and windows;
    d.  Improper installation of building wrap;
    e.  Use of improper fasteners and improper application of fasteners;
    f.  Improper framing;
    g.  Improper painting and caulking;
    h.  Improper roof installation;
    i.  Improper shingle-roof and roof framing installation;
    j.  Improper deck installation;
    k.  Improper driveway installation excavation, and fill;
    l.  Improper grading and fill dirt;
    m.  Lack of or improper flashing and waterproofing at junction of roofs, decks, walls, concrete and windows;
    n.  Improper design and installation to account for proper channeling of stormwater and failure to design and install drainage systems;
    o.  Improper accounting for routine thermal expansion and contraction of construction components;
    p.  Failure to notice defective work of other trades prior to performing subsequent work;

q. Failure to construct the Subject Property so as to make the exterior building envelope watertight thereby violating the building code in effect in Beaufort County at the time the work was performed;

r. Failure to investigate the subcontractors to determine if they were competent and capable of performing their work in accordance with good construction practices;

s. Failure to adequately supervise the work of subcontractors and/or employees;

t. Failure to discover defects in the work performed by sub-contractors and/or employees;

u. Failure to properly investigate and correct defective work and resulting damages;

v. Failure to construct the Subject Property in accordance with applicable building codes and industry standards;

w. Failure to act as a reasonably prudent developer would act under similar circumstances; and

x. Failure to act as a reasonably prudent contractor or sub-contractor would act under similar circumstances.

(Ex. 11, ¶55).

24.    Kirk's Bluff alleges that due to the design and construction deficiencies, continuous and repeated exposure to harmful conditions, including water intrusion, has occurred, resulting in physical and consequential damages. (Ex. 11, ¶56).

25.    Kirk's Bluff alleges that these events have occurred every year since construction and constitute "occurrences" and compensable damages. (*Id.*).

26.    Kirk's Bluff alleges that each year since completion, new areas of damages occurred separately and apart from any damage already in the process of occurring. (*Id.*).

27.     Kirk's Bluff alleges that the negligence/gross negligence of Ashley Ingram and Bluewater has resulted in damage to the work of the other subcontractors and trades and in damage to the residences and property and the constituents' use and enjoyment of their residences. (*Id*.).

28.     Kirk's Bluff alleges that as a direct and proximate result, Kirk's Bluff has suffered injuries and continues to suffer injuries and is entitled to the recovery of damages in the amount of the cost to repair the Subject Property, consequential damages, including loss of use and loss of value, punitive damages where applicable, plus costs, prejudgment interest, and post judgment interest. (Ex. 11, ¶57).

Allegations Against Ashley Ingram

29.     Kirk's Bluff asserts two causes of action against Ashley Ingram.

30.     Count I of the Underlying Lawsuit seeks damages for negligence/gross negligence against Ashley Ingram. (Ex. 11, ¶¶ 58-62).

31.     Kirk's Bluff also seeks damages for breach of express and implied warranties against Ashley Ingram in Count II. (Ex. 11, ¶¶ 63-69).

Allegations Against Bluewater

32.     Kirk's Bluff seeks four causes of action against Bluewater.

33.     Count III of the Underlying Lawsuit seeks damages against Bluewater for negligence/gross negligence. (Ex. 11, ¶¶ 70-74).

34.     Under Count IV, Kirk's Bluff seeks damages against Bluewater for breach of express and implied warranties. (Ex. 11, ¶¶ 75-81).

35.     Under Count V, Kirk's Bluff seeks damages against Bluewater for breach of fiduciary duty. (Ex. 11, ¶¶ 82-88). Kirk's Bluff alleges that as the developer, owner, and manager of the Subject Property, Bluewater owed Kirk's Bluff and unit owners a fiduciary duty to place the interests of Kirk's Bluff and unit owners above the interests of itself. This fiduciary duty included a duty to conduct a good faith investigation of all possible design and construction deficiencies in design and construction, a duty to disclose all known defects and market the units in a fair manner to the buyers, and a duty to manage the property, all without regard to self-interest. (Ex. 11, ¶83).

36.     Kirk's Bluff alleges Kirk's Bluff reposed a special confidence in Bluewater and Bluewater accepted that special confidence. (Ex. 11, ¶84).

37.     Kirk's Bluff alleges Bluewater owed a non-delegable duty to Kirk's Bluff to ensure that all of the common elements and limited common elements of the Subject Property are either in good repair and in compliance with all applicable building codes or that sufficient funds had been provided to Kirk's Bluff by Bluewater to make any necessary repairs at the time of transition of control from the Board by Bluewater to the unit owners. (Ex. 11, ¶85).

38.     Kirk's Bluff alleges that Bluewater breached the fiduciary and other non-delegable duties owed to Kirk's Bluff. (Ex. 11, ¶ 86).

39.     Kirk's Bluff alleges that as a direct and proximate result, Kirk's Bluff has suffered injuries and continues to suffer injuries and are entitled to the recovery of damages in the amount of the cost to repair the Subject Property, special damages, consequential damages, including loss of use and loss of value, punitive damages where applicable, plus costs and prejudgment and post judgment interest. (Ex. 11, ¶88).

40.     Under Count VI, Kirk's Bluff seeks damages against Bluewater for negligent misrepresentation. (Ex. 11, ¶¶ 89-98). Kirk's Bluff alleges that through disclosure statements, advertisements, sales brochures and other marketing literature, website advertisements, and by statements and actions of their agents, made numerous misrepresentations to Kirk's Bluff and potential buyers, including but not limited to, the quality and luxury of the Kirk's Bluff Townhomes. (Ex. 11, ¶90).

41.     Kirk's Bluff alleges the representation made by Bluewater and its agents to Kirk's Bluff and potential buyers were untrue and were misrepresentations of material facts. (Ex. 11, ¶92).

42.     Kirk's Bluff alleges Bluewater had a pecuniary interest in making such false representations to Kirk's Bluff and potential buyers in that the

representations were made for the purpose of selling the residential units and making a profit and/or a sales commission. (Ex. 11, ¶93).

43.    Kirk's Bluff alleges that as a direct and proximate result, Kirk's Bluff has suffered injuries and continues to suffer injuries and is entitled to the recovery of damages in the amount of the cost to repair the Subject Property, consequential damages, including loss of use and loss of value, punitive damages, plus costs and prejudgment and post judgment interests. (Ex. 11, ¶98).

Allegations Against J&H

44.    Kirk's Bluff asserts two causes of action against J&H.

45.    In Count VII, Kirk's Bluff seeks damages for negligence/gross negligence against the Subcontractors, including J&H. (Ex. 11, ¶¶ 99-103).

46.    In Count VIII, Kirk's Bluff seeks damages against J&H for breach of express or implied warranties. (Ex. 11, ¶¶ 104-107).

THE ASHLEY INGRAM POLICIES

47.    Atain issued eight Commercial General Liability ("CGL") policies to Ashley Ingram, which are attached as Exhibits 1-8 to this Complaint.

48.    The Ashley Ingram Policies provide CGL coverage, with limits of $1,000,000 per occurrence and $2,000,000 products-completed operations and general aggregate limit.

49.    The principal insuring agreements in the Ashley Ingram Policies provide, in pertinent part:

**SECTION I - COVERAGES**
**COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

   **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages, claims expenses and defense costs because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

. . .

   **b.**    This insurance applies to "bodily injury" and "property damage" only if:

   **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)**    The "bodily injury" or "property damage" occurs during the policy period; . . .

. . .

**2.    Exclusions**

This insurance does not apply to:

. . .

   **b.    Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**     That the insured would have in the absence of the contract or agreement; or

**(2)**     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. . . .

. . .

**j.**     **Damage To Property**

"Property damage" to:

. . .

**(5)**     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**     That particular part of any property that must be restored, repaired or replaced be-cause "your work" was incorrectly per-formed on it….

. . .

**k.**     **Damage To Your Product**

"Property damage" to "your product' arising out of it or any part of it.

**l.**     **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.**     **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**     A defect, deficiency, inadequacy or dangerous condition in "your product' or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.**    **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**    "Your product',

**(2)**    "Your work"; or

**(3)**    "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

. . .

**SECTION V – DEFINITIONS**

. . .

**8.**    "Impaired property" means tangible property, other than "your product' or "your work", that cannot be used or is less useful because:

**a.**    It incorporates "your product' or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the re-pair, replacement, adjustment or removal of "your product' or "your work" or your fulfilling the terms of the contract or agreement. …

. . .

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. …

. . .

**17.**    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

. . .

**21.**    "Your product":

    **a.**    Means:

        **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**    You;

            **(b)**    Others trading under your name; or

            **(c)**    A person or organization whose business or assets you have acquired; and

        **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product', and

        **(2)**    The providing of or failure to provide warnings or instructions.

. . .

**22.**    "Your work":

    **a.**    Means:

        **(1)**    Work or operations performed by you or on your behalf; and

        **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)**    The providing of or failure to provide warnings or instructions.

(Ex. 1-8, Form No. CG 00 01 04 13).

50. The Ashley Ingram 2015-16 Policy through the Ashley Ingram 2019-20 Policy include either Form No. BW 33515C 11-12 or Form No. BW 33515C 01-17, titled "New Construction Exclusion – Condominiums, Townhouse, Row House Or Tract Home Projects," which provide, in pertinent part:

> The following Exclusion is added to **2. Exclusions** of **SECTION 1 - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY and COVERAGE C MEDICAL PAYMENTS**:
>
> **Condominiums / Townhouse/ Row Houses/ Tract Homes**
> This insurance does not apply on behalf of any insured to any claim or "suit" including, but not limited to, indemnification or defense costs, arising from, related to, or in any way connected with new construction of a "condominium project," 'townhouse project," "row house project", or 'tract home project".
>
> For the purposes of this endorsement, the following definitions are added to **SECTION V - DEFINITIONS**:
> "Condominium project" means a housing development in which individual parties are located within one or more buildings or structures containing multiple units, with each individual unit being

owned separately and with other parts or portions of the overall development, including buildings, structures, land, and other such common elements being owned in common by all owners of the separate individual units, either with or without the establishment of a corporate entity or incorporated association to oversee and manage the common elements.

. . .

"Townhouse project" means a development of 30 or more individual housing units connected to one another by one or more walls, with other parts or portions of the overall development, including buildings, structures, land and other common elements being owned in common by all owners of the separate individual housing units, either with or without the establishment of a corporate entity or unincorporated association to oversee and manage the use and maintenance of common elements.

. . .

This exclusion does not apply when:

A.    Any work or services performed by or on behalf of any insured, or any goods or products provided by or on behalf of any insured that is part of a "condominium project," "row house project," and/ or townhouse project" if such work, service(s), good(s), or product(s) is limited to remodeling or renovation of an existing unit; or

B.    There is new construction of a residential 'townhouse project' or "condominium project" consisting of 30 units or fewer in any one location, 'townhouse project' or "condominium project" or association.

(Exhibits 1-5, Form No. BW 33515C 11-12; Form No. BW 33515C 01-17).

51.    The Ashley Ingram 2016-17 Policy includes an endorsement modifying the definition of "Townhouse Project" to mean a development of 37 or more individual housing units connected to one another by one or more walls, with other parts or portions of the overall development, including buildings, structures, land and other common elements being owned in common by all

owners of the separate individual housing units, either with or without the establishment of a corporate entity or unincorporated association to oversee and manage the use and maintenance of common elements. . . ." (Exhibit 2). No other Ashley Ingram Policies include this endorsement.

52.    The Ashley Ingram 2019-20 Policy through the Ashley Ingram 2022-23 Policy include Form No. AF33818 07-12 titled "Prior Work Exclusion," which provides, in pertinent part:

> The following is added to **SECTION - I COVERAGES, COVERAGE. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions:**
>
> **Prior Work**
>
> This insurance does not apply to "bodily injury" or "property damage" that arises out of "your work", that was completed prior to:
>
> **(1)** The inception date of the first policy in a series of uninterrupted renewal policies issued by us; or
>
> **(2)** The inception date of this policy.
>
> "Your work" will be deemed completed at the earliest of the following times:
>
> **(1)** When all of the work called for in your contract has been completed;
>
> **(2)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or
>
> **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

This exclusion applies even if the "occurrence" continues during the policy period.

(Exhibits 5-8, Form No. AF33818 07-12).

53.    The Ashley Ingram 2019-20 Policy is listed as "New" and changes Ashley Ingram's Business Description to "Commercial And Residential General Contractor" from just "Residential General Contractor" and its Classification Description to "Contractors – executive supervisors or executive superintendents-including products and/or completed operations" and "Contractors-subcontracted work- in connection with the construction, reconstruction, repair or erection of buildings-NOC". (Exhibit 5, Declarations and Supplemental Declarations.)

54.    The Ashley Ingram 2020-21 Policy is also listed as "New" and the policy period is from January 29, 2020 through January 29, 2021. The Business Description was changed to "General Contractor" and the Classification Descriptions were changed to "Contractors-subcontracted work-in connection with building construction, reconstruction or repair," and "General contractors or developers." (Exhibit 6, Declarations, Supplemental Declarations).

55.    The Ashley Ingram 2020-21 Policy through the Ashley Ingram 2022-23 Policy include Form No. AF33535 02-17, titled "First Manifestation Amended of Insuring Agreement," which provides, in pertinent part:

It is hereby understood and agreed as follows:

A.    Item 1. - Insuring Agreement paragraph 1.b. of Section I, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY is amended to read as follows:

This insurance applies to "bodily injury" or "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period;

(3)    None of the "bodily injury", "property damage" to each person or organization presenting a "claim" or filing "suit" manifested itself or became apparent to any insured or additional insured prior to the effective date of this policy.

. . .

C.    It is hereby agreed that paragraph 13. "occurrence" of SECTION V - DEFINITIONS is deleted in its entirety and replaced with the following:

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions that happens during the term of this insurance. "Property damage", "bodily injury", or "personal and advertising injury" which commenced prior to the effective date of this insurance will be deemed to have happened prior to and not during the term of this insurance.

> This insurance does not apply, and we shall have no duty to defend or indemnify any insured for any claim, "occurrence" or "suit" seeking damages arising out of "bodily injury", "property damage", or "personal advertising injury" that commenced prior to the inception date of this policy or after the expiration of this policy. …

(Exhibits 6-8, Form No. AF33535 02-17).

56.    The Ashley Ingram 2020-21 Policy through the Ashley Ingram 2022-23 Policy include Form No. AF001746 04-16, titled "Subcontractors Warranty Endorsement," which provides, in pertinent part:

> The INDEPENDENT CONTRACTORS LIABILITY ENDORSEMENT, in the Combined Coverage and Exclusion Endorsement AF 001 007, is deleted in its entirety and replaced with the language of this endorsement.
>
> It is hereby agreed and understood that this policy is amended to include the following as a condition precedent for any insured seeking coverage under this policy:
>
> For any "subcontractor" working on behalf any insured, it is hereby agreed and understood that such "subcontractor" shall obtain occurrence form general liability coverage covering the work performed by such "subcontractor" with an insurance carrier rated "A" or better by A.M. Best and with limits of liability of at least $1,000,000 per occurrence and in the aggregate.
>
> Such insurance must be obtained and in-force prior to the start of work performed by such "Subcontractor." Such insurance must also include the Named Insured, as well as any other insured seeking coverage under this policy, as an Additional Insured.

It shall be the duty of any insured seeking coverage under this policy to obtain all necessary documentation that ensures that conditions of this endorsement are satisfied. We shall have no obligation for defense or indemnity for any insured seeking coverage under this policy if all of the conditions of this Endorsement are not satisfied.

For purposes of this endorsement, "subcontractor" means one that contracts to do work or perform a service for another and includes any one working for or retained by a subcontractor, independent contractor, or any one working for or retained by an independent contractor.

When there is no coverage for any one insured under this endorsement, coverage is also excluded for any other insured and Section IV.7.b of form CG 00 01 shall not apply.

(Exhibits 6-8, Form No. AF001746 04-16).

57.    The Ashley Ingram 2021-22 and 2022-23 Policy also include Form No. CG2139 10-93, titled, "Contractual Liability Limitation," which provides, in pertinent part:

The definition of "insured contract" in the DEFINITIONS Section is replaced by the following:

"Insured contract" means:

**a.**  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.**  A sidetrack agreement;

**c.**  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement.

(Exhibits 7-8, Form No. CG2139 10-93).

58.     The Ashley Ingram 2015-16 Policy, the Ashley Ingram 2016-17 Policy, and the Ashley Ingram 2017-18 Policy include Form No. CG 2010 04 13, titled, "Additional Insured – Owners, Lessees Or Contractors-Scheduled Person Or Organization" ("Additional Insured Endorsement"). On these Policies, Bluewater is listed in the "Schedule" for this form. The Additional Insured Endorsement provides, in pertinent part, as follows:

**A.**     **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.**    With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.**    All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.**    That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

(Exhibits 1-3, Form No. CG 2010 04 13).

59.    Bluewater is not listed as an additional insured on any of the other Ashley Ingram Policies.

<u>THE J&H POLICIES</u>

60.    Atain issued two CGL policies to J&H, attached as Exhibits 9 and 10 to this Complaint.

61.    The J&H Policies provide CGL coverage, with limits of $1,000,000 per occurrence and $2,000,000 products-completed operations and general aggregate limit.

62.    The principal insuring agreements in the J&H Policies provide, in pertinent part:

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages, claims expenses and defense costs because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
   . . .

   b. This insurance applies to "bodily injury" and "property damage" only if:
   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
   **(2)** The "bodily injury" or "property damage" occurs during the policy period; . . .

   . . .

2. **Exclusions**

   This insurance does not apply to:

   . . .

   b. **Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   **(1)** That the insured would have in the absence of the contract or agreement; or
   **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. . . .

. . .

**j.     Damage To Property**

"Property damage" to:

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced be-cause "your work" was incorrectly per-formed on it.

. . .

**k.     Damage To Your Product**

"Property damage" to "your product' arising out of it or any part of it.

**l.     Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.     Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product' or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.    Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product',

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

. . .

## SECTION V – DEFINITIONS

. . .

**8.**    "Impaired property" means tangible property, other than "your product' or "your work", that cannot be used or is less useful because:

**a.**    It incorporates "your product' or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the re-pair, replacement, adjustment or removal of "your product' or "your work" or your fulfilling the terms of the contract or agreement.

. . .

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**17.**    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

. . .

**21.**    "Your product":

    **a.**    Means:

        **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and

        **(2)**    The providing of or failure to provide warnings or instructions.

. . .

**22.**    "Your work":

    **a.**    Means:

        **(1)**    Work or operations performed by you or on your behalf; and

        **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

(Exhibits 9-10, Form No. CG 00 01 04 13).

63. The J&H Policies include Form No. BW33515C 11/2012, titled "Exclusion – New Ground – Up Condominiums, Townhouse, Rowhouse, or Tract Home Construction Projects," which provides, in pertinent part:

The following Exclusion is added to **2. Exclusions** of **SECTION 1 - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY** and **COVERAGE C MEDICAL PAYMENTS**:

**Condominiums / Townhouse/ Row Houses/ Tract Homes**
This insurance does not apply on behalf of any insured to any claim or "suit" including, but not limited to, indemnification or defense costs, arising from, related to, or in any way connected with new construction of a "condominium project," 'townhouse project," "row house project", or 'tract home project".

For the purposes of this endorsement, the following definitions are added to **SECTION V -DEFINITIONS**:
"Condominium project" means a housing development in which individual parties are located within one or more buildings or structures containing multiple units, with each individual unit being owned separately and with other parts or portions of the overall development, including buildings, structures, land, and other such common elements being owned in common by all owners of the separate individual units, either with or without the establishment of a corporate entity or incorporated association to oversee and manage the common elements.
. . .

"Townhouse project" means a development of 30 or more individual housing units connected to one another by one or more walls, with other parts or portions of the overall development, including buildings, structures, land and other common elements being owned in common by all owners of the separate individual housing units, either with or without the establishment of a corporate entity or unincorporated association to oversee and manage the use and maintenance of common elements.

. . .

This exclusion does not apply when:

A.    Any work or services performed by or on behalf of any insured, or any goods or products provided by or on behalf of any insured that is part of a "condominium project," "row house project," and/ or townhouse project" if such work, service(s), good(s), or product(s) is limited to remodeling or renovation of an existing unit; or

B.    There is new construction of a residential 'townhouse project' or "condominium project" consisting of 30 units or fewer in any one location, 'townhouse project" or "condominium project" or association.

(Exhibits 9-10, Form No. BW33515C 11/2012).

64.    The J&H Policies include Form No. ICIL1130 04/10, titled "Continuous and Progressive Injury Limitation," which provides, in pertinent part:

**A.**    This insurance does not apply to the following, which is added to the EXCLUSIONS:

All "bodily injury", "property damage", or "personal and advertising injury" that first becomes actually or constructively known to any person prior to the effective date or after the expiration of this policy regardless of whether there is repeated or continued exposure during the period of the policy or whether the injury or damage continues, progresses or deteriorates during the term of the policy.

**B.**     If this policy extends for more than one annual period, then the following applies:

    **1.**     The most we will pay for "bodily injury", "property damage" or "personal and advertising injury" that is continuous or progressively deteriorating, and that is first apparent during one of the periods of this policy, is the applicable limit of insurance available with respect to that one period.

    **2.**     The limit specified in Paragraph **B.1.** above is the only limit that applies to all related "bodily injury", "property damage" or "personal and advertising injury", regardless of whether such injury or damage existed before, or continues or progressively deteriorates after, the period which it is first apparent.

**C.**     Within the meaning of this endorsement, injury or damage is apparent when appreciable harm occurs that is or should be known to the insured, the person or organization harmed.

(Exhibits 9-10, Form No. ICIL1130 04/10).

65.     The J&H Policies also include Form No. AF98001 07 2012, titled "Punitive Damage Exclusion", which provides:

The following exclusion is added to the **Exclusion** section of each of the above Coverage Forms:

**PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION**

This insurance does not apply to punitive or exemplary damages, fines or penalties. If a covered "suit" is brought against the Insured, seeking both compensatory and punitive or exemplary damages, fines, or penalties, then we will afford defense to such action, without liability, for such punitive or exemplary damages, fines or penalties.

(Exhibits 9-10, Form No. AF98001 07 2012).

66.    The J&H Policies include Form No. CG2139 10-93, titled,

"Contractual Liability Limitation," which provides, in pertinent part:

> The definition of "insured contract" in the **DEFINITIONS** Section is replaced by the following:
>
> "Insured contract" means:
>
> **a.**    A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";
>
> **b.**    A sidetrack agreement;
>
> **c.**    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
>
> **d.**    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
>
> **e.**    An elevator maintenance agreement.

(Exhibits 9-10, Form No. CG2139 10-93).

**COUNT I – DECLARATORY JUDGMENT AS TO ASHLEY INGRAM, BLUEWATER AND KIRK'S BLUFF - NO COVERAGE UNDER THE ASHLEY INGRAM 2015-16, 2017-18, 2018-19, 2019-20 POLICIES - NEW CONSTRUCTION EXCLUSION – CONDOMINIUMS, TOWNHOUSE, ROW HOUSE OR TRACT HOME PROJECTS**

67.    Atain repeats and realleges paragraphs 1-66 as paragraph 67 of

Count I.

68.    The allegations of the Underlying Lawsuit allege liability against Ashley Ingram pertaining to construction and design defects arising from the development of the Subject Property.

69.    The Underlying Lawsuit alleges the Subject Property is a group of individual residential townhomes commonly referred to as Kirk's Bluff Townhomes, located in Beaufort County, South Carolina. The Subject Property according to the Underlying Lawsuit includes 10 buildings comprising 36 residential townhomes total, along with other common areas.

70.    The Underlying Lawsuit is excluded under the New Construction Exclusion because the Subject Property falls under the definition of "townhouse project," which is defined as a development of 30 or more individual housing units connected to one another by one or more walls, with other parts or portions of the overall development, including buildings, structures, land and other common elements being owned in common by all owners of the separate individual housing units.

71.    The Underlying Lawsuit is excluded under the New Construction Exclusion because the Subject Property also falls under the definition of "condominium project," which is defined as a housing development in which individual parties are located within one or more buildings or structures containing multiple units, with each individual unit being owned separately and

with other parts or portions of the overall development, including buildings, structures, land and other such common elements being owned in common by all owners of the separate individual units.

72.    Accordingly, the New Construction Exclusion excludes coverage for the Underlying Lawsuit under the Ashley Ingram 2015-16 Policy, the Ashley Ingram 2017-18 Policy, the Ashley Ingram 2018-19 Policy, and the Ashley Ingram 2019-20 Policy, because the Underlying Lawsuit arises from, is related to, or is connected with the new construction of a "condominium project" or "townhouse project."

## COUNT II – DECLARATORY JUDGMENT AS TO ASHLEY INGRAM, BLUEWATER AND KIRK'S BLUFF - NO COVERAGE UNDER THE ASHLEY INGRAM 2020-21, 2021-22, 2022-23 POLICIES – FIRST MANIFESTATION ENDORSEMENT

73.    Atain repeats and realleges paragraphs 1-66 as paragraph 73 of Count II.

74.    The Ashley Ingram 2020-21 Policy, the Ashley Ingram 2021-22 Policy, and the Ashley Ingram 2022-23 Policy include the First Manifestation Endorsement which defines an "occurrence" as an accident, including continuous or repeated exposure to substantially the same general harmful conditions that happens during the term of this insurance. "Property damage," bodily injury", or "personal and advertising injury" which commenced prior to the effective date of this insurance will be deemed to have happened prior to and

not during the term of this insurance. This modified definition also provides that "[t]his insurance does not apply, and we shall have no duty to defend or indemnify any insured for any claim, 'occurrence' or 'suit' seeking damages arising out of 'bodily injury', 'property damage', or 'personal advertising injury' that commenced prior to the inception date of this policy or after the expiration of this policy."

75.    The First Manifestation Endorsement also provides that "[t]his insurance applies to 'property damage' only if … [n]one of the … 'property damage' to each person or organization presenting a 'claim' or filing 'suit' manifested itself or became apparent to any insured or additional insured prior to the effective date of this policy." …

76.    The Underlying Lawsuit alleges that the alleged "property damage" has been occurring since construction. The Certificates of Occupancy were issued between 2015 and 2016.

77.    The First Manifestation Endorsement provides that this insurance does not apply, and Atain shall have no duty to defend or indemnify any insured for any claim, "occurrence" or "suit" seeking damages arising out of "property damage" that commenced prior to the inception date of this policy or after the expiration of this policy.

78.     Because the Underlying Lawsuit alleges that the subject "property damage" commenced prior to the Ashley Ingram 2020-21 Policy, there is no coverage under the Policies that contain the First Manifestation Endorsement.

79.     Further, to the extent that the "property damage" alleged in the Underlying Lawsuit manifested or was discovered prior to the Ashley Ingram 2020-21 Policy, there is no coverage under any of the Policies containing the First Manifestation Endorsement.

## COUNT III – DECLARATORY JUDGMENT AS TO ASHLEY INGRAM, BLUEWATER AND KIRK'S BLUFF – NO COVERAGE UNDER THE ASHLEY INGRAM 2017-18, 2018-19, 2019-20, 2020-21, 2021-22, 2022-23 POLICIES - PRIOR WORK EXCLUSION

80.     Atain repeats and realleges paragraphs 1-66 as paragraph 80 of Count III.

81.     The Underlying Lawsuit alleges that Ashley Ingram acted as general contractor for the Subject Property, and Bluewater acted as the developer for the Subject Property.

82.     The Underlying Lawsuit alleges that the Town of Bluffton issued building permits for the various townhomes at the Subject Property between December 16, 2014 and 2016 and issued the corresponding Certificates of Occupancy between 2015 and 2016.

83.     The Prior Work Exclusion states that this insurance does not apply to "property damage" that arises out of "your work", that was completed prior

to the inception date of the first policy in a series of uninterrupted renewal policies issued by us or the inception date of this policy.

84.     The Prior Work Exclusion also states this exclusion applies if the "occurrence" continues during the policy period.

85.     There is no coverage under the Ashley Ingram 2017-18, 2018-19, 2019-20, 2020-21, 2021-22, 2022-23 Policies because the Subject Property was completed prior to January 26, 2017.

86.     Alternatively, there is no coverage under the "Prior Work" Exclusion under the Ashley Ingram 2019-20 Policy and all subsequent Policies because it was a "New" Policy and not part of a series of uninterrupted renewal policies issued by Atain to Ashley Ingram. Further, there is no coverage under the Prior Work Exclusion for the Ashley Ingram 2020-21, 2021-22, 2022-23 Policies because the Ashley Ingram 2020-21 Policy is also a "New" Policy and was not part of a series of uninterrupted renewal policies issued by Atain to Ashley Ingram.

**COUNT IV – DECLARATORY JUDGMENT AS TO ASHLEY INGRAM, BLUEWATER AND KIRK'S BLUFF – NO COVERAGE UNDER THE ASHLEY INGRAM 2020-21, 2021-22, 2022-23 POLICIES - SUBCONTRACTOR WARRANTY ENDORSEMENT**

87.     Atain repeats and realleges paragraphs 1-66 as paragraph 87 of Count IV.

88.     The Underlying Lawsuit alleges that Ashley Ingram acted as general contractor for the Subject Property.

89.     Ashley Ingram is the sole named insured listed on the Ashley Ingram 2020-21, 2021-22, 2022-23 Policies.

90.     The Subcontractor Warranty Endorsement provides that for any "subcontractor" working on behalf any insured, such "subcontractor" shall obtain general liability coverage covering the work performed by such "subcontractor" with an insurance carrier rated "A" or better by A.M. Best and with limits of liability of at least $1,000,000 per occurrence and in the aggregate, that such insurance must be obtained and in-force prior to the start of work performed by such "subcontractor," and that such insurance must also include the named insured, as well as any other insured seeking coverage under this policy, as an Additional Insured.

91.     Further, the Subcontractor Warranty Endorsement provides that any insured seeking coverage under the Ashley Ingram Policies shall obtain all necessary documentation that ensures that conditions of the Subcontractor Warranty Endorsement are satisfied. Atain shall have no obligation for defense or indemnity for any insured seeking coverage if all the conditions of the Subcontractor Warranty Endorsement are not satisfied.

92.    On information and belief, Ashley Ingram failed to have any written contracts with any subcontractors it contracted with to perform work on the Kirk's Bluff Townhomes Project that obligated the subcontractors to carry Commercial General Liability insurance or to name Ashley Ingram as an additional insured under their Commercial General Liability Insurance.

93.    On information and belief, Ashley Ingram failed to satisfy the requirements of the Subcontractor Warranty Endorsement as none of the insurance policies issued the subcontractors for Ashley Ingram provide that Ashley Ingram is an additional insured under the Policies.

94.    On information and belief, Ashley Ingram failed to obtain the necessary documentation to ensure that the conditions of the Subcontractor Warranty Endorsement were satisfied.

95.    Accordingly, there is no coverage under the Ashley Ingram 2020-21, 2021-22, 2022-23 Policies due to Ashley Ingram's failure to satisfy the requirements of the Subcontractor Warranty Endorsement.

## COUNT V – DECLARATORY JUDGMENT AS TO ASHLEY INGRAM, BLUEWATER AND KIRK'S BLUFF – NO COVERAGE – NO PROPERTY DAMAGE

96.    Atain repeats and realleges paragraphs 1-66 as paragraph 96 of Count V.

97. There is no coverage to the extent that the Underlying Lawsuit does not allege any "property damage" occurring during any of the Ashley Ingram Policies.

98. There is no coverage to the extent that the Underlying Lawsuit seeks damages for the costs to repair or replace Ashley Ingram's or Bluewater's own work, including any damages incurred to access such work to effectuate any repairs, as such damages do not qualify as "property damage" caused by an "occurrence" under the Ashley Ingram Policies.

99. There is no coverage for the claims against Bluewater for negligent misrepresentation (Ex. 11, Count VI), because such claims do not allege "property damage" caused by an "occurrence."

100. There is no coverage for the breach of fiduciary duty claims against Bluewater (Ex. 11, ¶ Count V), to the extent such claims do not allege any "property damage" caused by an "occurrence."

101. Alternatively, to the extent the Underlying Lawsuit alleges covered "property damage" during the Ashley Ingram Policies, Atain's duty to indemnify is limited to its *pro rata* time on the risk over only the Ashely Ingram Policies that apply to the Underlying Lawsuit.

**COUNT VI – DECLARATORY JUDGMENT AS TO ASHLEY INGRAM,
BLUEWATER AND KIRK'S BLUFF – NO COVERAGE UNDER THE ASHLEY
INGRAM POLICIES – BUSINESS RISK EXCLUSIONS**

102.    Atain repeats and realleges paragraphs 1-66 as paragraph 102 of Count VI.

103.    There is no coverage for the Underlying Lawsuit under the Ashley Ingram Policies' Contractual Liability Exclusion (Coverage Part A.2.b.), and the Ashley Ingram Policies Contractual Liability Limitation.

104.    There is no coverage to the extent the Underlying Lawsuit seeks damages for "property damage" to any real property on which Ashley Ingram or its subcontractors performed any work or operations under Coverage Part A.2.(j)(5).

105.    There is also no coverage to the extent the Underlying Lawsuit seeks damages for "property damage" to any property that must be restored, repaired or replaced because Ashley Ingram's work was incorrectly performed on it under Coverage Part A.2.(j)(6).

106.    There is no coverage to the extent that the Underlying Lawsuit seeks damages to Ashley Ingram's product under Coverage Part A.2.(k) ("Your product" Exclusion).

107.    There is no coverage to the extent the Underlying Lawsuit seeks damages to Ashley Ingram's work, arising out of it and included in the products-

completed operations hazard under Coverage Part A.2.l. ("Your work" Exclusion).

108.   There is no coverage to the extent that the Underlying Lawsuit seeks damages for impaired property under Coverage Part A.2.m. ("Impaired Property" Exclusion).

109.   There is no coverage to the extent that the Underlying Lawsuit seeks damages for any loss, cost or expense incurred by Ashley Ingram or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of Ashley Ingram's product, Ashley Ingram's work, or any "impaired property" if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it under Coverage Part A.2.n. ("Recall Exclusion").

## COUNT VII – DECLARATORY JUDGMENT AS TO ASHLEY INGRAM, BLUEWATER AND KIRK'S BLUFF – NO COVERAGE – BLUEWATER IS NOT AN INSURED

110.   Atain repeats and realleges paragraphs 1-66 as paragraph 110 of Count VII.

111.   The Additional Insured Endorsement states that the person(s) or organization(s) shown in the Schedule are additional insureds but only with respect to liability for "property damage" caused by the acts or omissions of the

insured, or anyone acting on the insured's behalf, during the insured's ongoing operations.

112.    The Additional Insured Endorsement further provides there is no coverage for any such Additional Insured for any "property damage" occurring after the named insured has completed its work or after the Subject Property has been put to its intended use.

113.    The Underlying Lawsuit only alleges "property damage" occurring since completion of Ashely Ingram's work. Accordingly, there is no coverage for Bluewater under the Additional Insured Endorsement in the Ashley Ingram 2015-16, 2016-17 and 2017-18 Policies.

114.    Bluewater is not a named or additional insured on any of the other Ashley Ingram Policies.

115.    Further, there is no coverage for Bluewater for its own acts or omissions, including but not limited to the claims for breach of fiduciary duty and negligent misrepresentation, since such conduct does not arise out of Ashley Ingram's ongoing operations for Bluewater.

116.    Further, there is no coverage for Bluewater to the extent there is no coverage for Ashley Ingram because Bluewater could not possess greater rights under the Ashley Ingram Policies than Ashley Ingram.

## COUNT VIII – NO COVERAGE AS TO AS TO ASHLEY INGRAM, BLUEWATER AND KIRK'S BLUFF – MISCELLANEOUS POLICY PROVISIONS

117.    Atain repeats and realleges paragraphs 1-66 as paragraph 117 of Count VIII.

118.    To the extent that any other terms, conditions, exclusions or endorsements under the Ashley Ingram Policies, which are fully incorporated into this Count by reference, apply to the Underlying Lawsuit, there is no coverage for the Underlying Lawsuit.

119.    Alternatively, coverage for the Underlying Lawsuit is limited, to the extent any terms, conditions, exclusions, or endorsements in the Ashley Ingram Policies limit or reduce the available coverage.

## COUNT IX – DECLARATORY JUDGMENT- TIME ON RISK

120.    Atain repeats and realleges paragraphs 1-119 as paragraph 120 of Count IX.

121.    Because there is no coverage under the 2015-16, 2017-18, 2018-19, 2019-20, 2020-21, 2021-22, 2022-23 Ashley Ingram Policies, Atain's time on the risk for the Underlying Lawsuit is limited to the 2016-17 Ashley Ingram policy period, if at all.

122.    Accordingly, to the extent any alleged covered "property damage" occurred during the 2016-17 Ashley Ingram Policy, Atain's *pro rata* time on the risk is limited to one year.

123.    Atain is entitled to a judicial declaration that its time on the risk is for 365 days, and only the limits of insurance for the 2016-17 Ashley Ingram Policy are applicable.

## COUNT X – DECLARATORY JUDGMENT AS TO J&H, ASHLEY INGRAM AND KIRK'S BLUFF – NEW CONSTRUCTION EXCLUSION – CONDOMINIUMS, TOWNHOUSE, ROW HOUSE OR TRACT HOME PROJECTS

124.    Atain repeats and realleges paragraphs 1-66 as paragraph 124 of Count X.

125.    The allegations of the Underlying Lawsuit allege liability against J&H pertaining to construction and design defects arising from the development of the Subject Property.

126.    The Underlying Lawsuit alleges the Subject Property is a group of individual residential townhomes commonly referred to as Kirk's Bluff Townhomes, located in Beaufort County, South Carolina. The Underlying Lawsuit alleges that the Subject Property includes 10 buildings comprising 36 residential townhomes total, along with other common areas.

127.    The Underlying Lawsuit is excluded under the New Construction Exclusion because the Subject Property falls under the definition of "townhouse

project," which is defined as a development of 30 or more individual housing units connected to one another by one or more walls, with other parts or portions of the overall development, including buildings, structures, land and other common elements being owned in common by all owners of the separate individual housing units.

128.    The Underlying Lawsuit is excluded under the New Construction Exclusion because the Subject Property also falls under the definition of "condominium project," which is defined as a housing development in which individual parties are located within one or more buildings or structures containing multiple units, with each individual unit being owned separately and with other parts or portions of the overall development, including buildings, structures, land and other such common elements being owned in common by all owners of the separate individual units.

129.    Accordingly, the New Construction Exclusion excludes coverage for the Underlying Lawsuit under the J&H Policies, because the Underlying Lawsuit arises from, is related to, or is connected with the new construction of a "condominium project" or "townhouse project."

## COUNT XI – DECLARATORY JUDGMENT AS TO J&H, ASHLEY INGRAM AND KIRK'S BLUFF – NO COVERAGE UNDER J&H POLICIES' CPIL ENDORSEMENT

130.    Atain repeats and realleges paragraphs 1-66 as paragraph 130 of Count XI.

131.    Pursuant to the J&H Policies' Continuous & Progressive Injury Limitation ("CPIL Endorsement"), there is no coverage for any "property damage" that is first discovered by any person either prior to the J&H Policies or after the last J&H Policy terminated.

132.    The J&H 2015-16 Policy terminated on July 5, 2016.

133.    There is no coverage under the J&H Policies' CPIL Endorsement because the alleged "property damage" was not discovered until after the last J&H Policy terminated.

134.    None of the defendants in the Underlying Lawsuit discovered the alleged "property damage" between July 5, 2014 and July 5, 2016.

135.    Kirk's Bluff did not discover the alleged "property damage" between July 5, 2014 and July 5, 2016. Had it done so, the applicable statute of limitations would have barred Kirk's Bluff's claims.

136.    J&H did not discover the alleged "property damage" between July 5, 2014 and July 5, 2016, because had it done so, it would be in violation of the J&H Policies' notice conditions to Atain.

137.    Further, as none of the buildings in the Kirk's Bluff Townhome Project were completed until after the J&H 2014-15 Policy terminated, there was no "property damage" alleged during the J&H 2014-15 Policy and therefore no possibility that any person could have discovered any "property damage" during the J&H 2014-15 Policy.

138.    Because no person discovered the "property damage" that was alleged in the Underlying Lawsuit between July 5, 2014 and July 5, 2016, there is no coverage under the J&H Policies.

## COUNT XII – DECLARATORY JUDGMENT AS TO J&H, ASHLEY INGRAM AND KIRK'S BLUFF – NO COVERAGE UNDER J&H POLICIES– NO PROPERTY DAMAGE

139.    Atain repeats and realleges paragraphs 1-66 as paragraph 139 of Count XII.

140.    The buildings in the Kirk's Bluff Townhome Project were completed after July 5, 2015.

141.    The Underlying Lawsuit alleges that the alleged "property damage" occurred since construction and was continuing each year since completion of construction.

142.    The Underlying Lawsuit does not allege any "property damage" during the J&H 2014-15 Policy.

143.    There is no coverage to the extent that no "property damage" occurred during any of the J&H Policies.

144.    There is no coverage to the extent that the Underlying Lawsuit seeks damages for the costs to repair or replace J&H's own work, including any damages incurred to access such work to effectuate any repairs, as such damages do not qualify as "property damage" caused by an "occurrence" under the J&H Policies.

145.    Alternatively, to the extent any "property damage" occurred during the J&H Policies, Atain's obligation to indemnify J&H is limited by Atain's *pro rata* time on the risk.

### COUNT XIII – DECLARATORY JUDGMENT AS TO J&H, ASHLEY INGRAM AND KIRK'S BLUFF – NO COVERAGE UNDER J&H POLICIES-BUSINESS RISK EXCLUSIONS

146.    Atain repeats and realleges paragraphs 1-66 as paragraph 146 of Count XIII.

147.    There is no coverage for the Underlying Lawsuit under the J&H Policies' Contractual Liability Exclusion (Coverage Part A.2.b.), and the J&H Policies Contractual Liability Limitation.

148.    There is no coverage to the extent the Underlying Lawsuit seeks damages for "property damage" to any real property on which J&H or its subcontractors performed any work or operations under Coverage Part A.2.(j)(5).

149.     There is also no coverage to the extent the Underlying Lawsuit seeks damages for "property damage" to any property that must be restored, repaired or replaced because J&H's work was incorrectly performed on it under Coverage Part A.2.(j)(6).

150.     There is no coverage to the extent that the Underlying Lawsuit seeks damages to J&H's product under Coverage Part A.2.(k) ("Your product" Exclusion).

151.     There is no coverage to the extent the Underlying Lawsuit seeks damages to J&H's work, arising out of it and included in the products-completed operations hazard under Coverage Part A.2.l. ("Your work" Exclusion).

152.     There is no coverage to the extent that the Underlying Lawsuit seeks damages for impaired property under Coverage Part A.2.m. ("Impaired Property" Exclusion).

153.     There is no coverage to the extent that the Underlying Lawsuit seeks damages for any loss, cost or expense incurred by J&H or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of J&H's product, J&H's work, or any "impaired property" if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect,

deficiency, inadequacy or dangerous condition in it under Coverage Part A.2.n. ("Recall Exclusion").

## COUNT XIV – DECLARATORY JUDGMENT AS TO J&H, ASHLEY INGRAM AND KIRK'S BLUFF – NO COVERAGE UNDER J&H POLICIES – PUNITIVE DAMAGES EXCLUSION

154. Atain repeats and realleges paragraphs 1-66 as paragraph 154 of Count XIV.

155. The Underlying Lawsuit alleges that Kirk's Bluff is entitled to punitive damages from the defendants, including J&H.

156. There is no coverage under the J&H Policies for any award of punitive damages because such damages are excluded.

## COUNT XV – DECLARATORY JUDGMENT AS TO J&H, ASHLEY INGRAM AND KIRK'S BLUFF – NO COVERAGE – MISCELLANEOUS J&H POLICY PROVISIONS

157. Atain repeats and realleges paragraphs 1-66 as paragraph 157 of count XV.

158. To the extent that any other terms, conditions, exclusions or endorsements under the J&H Policies, which are fully incorporated into this Count by reference, apply to the Underlying Lawsuit, there is no coverage for the Underlying Lawsuit.

159.    Alternatively, coverage for the Underlying Lawsuit is limited, to the extent any terms, conditions, exclusions, or endorsements in the J&H Policies limit or reduce the available coverage.

## REQUESTED RELIEF

WHEREFORE, Atain respectfully requests this Court:

A.    Take jurisdiction and adjudicate the rights of the parties under the Ashley Ingram Policies and the J&H Policies;

B.    Find that Atain has no duty to defend or indemnify Ashley Ingram for the Underlying Lawsuit under the Ashley Ingram Policies, either in whole or in part;

C.    Find that Atain has no duty to defend or indemnify Bluewater for the Underlying Lawsuit under the Ashley Ingram Policies, either in whole or in part;

D.    Find that Atain has no duty to defend or indemnify J&H under the J&H Policies, either in whole or in part; and

E.    Award Atain all costs it incurs to prosecute this action, as well as any other relief that this Court deems equitable, just, and proper.

/ / /

/ / /

/ / /

Respectfully submitted,

**COOPER | TIERNEY**

*/s/ Dustin J. Pitts*
Lindsey W. Cooper Jr. (Fed. ID No. 9909)
M. Linsay Boyce (Fed. ID No. 11952)
Dustin J. Pitts (Fed. ID No. 13511)
36 Broad Street
Charleston, SC  29401
Telephone: 843.375.6622
Facsimile: 843.375.6623
lwc@coopertierney.com
linsay@coopertierney.com
djp@coopertierney.com

*Attorneys for Atain Spec. Ins. Co.*

August 30, 2024
Charleston, South Carolina